IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TINA MCMICHAEL,<br>PLAINTIFF,<br><br>VS.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br>DEFENDANT. | §<br>§<br>§<br>§ CIVIL ACTION NO. 4:13-CV-860-A<br>§<br>§<br>§<br>§<br>§ |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Tina McMichael ("McMichael") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). McMichael applied for DIB in August 2010, alleging that her disability began on January 1, 2009. (Transcript ("Tr.") 12, 142-43.) After her application for benefits was denied initially and on reconsideration, McMichael requested a hearing before an administrative law judge ("ALJ"). (Tr. 12, 90.) The ALJ held a hearing on January 12, 2012, and he issued an unfavorable decision on June 21, 2012. (Tr. 12-24, 30-75.) On August 22, 2013, the Appeals Council denied

McMichael's request for review, leaving the ALJ's decision as the final decision of the Commissioner in her case. (Tr. 1-5.) McMichael subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the

claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## II. ISSUES

In her brief, McMichael presents the following issues:

1. Whether the ALJ applied the proper legal standard at Step Two in evaluating McMichael's non-severe impairments relating to her back, sleep apnea, and hands;

2. Whether the ALJ's findings at Step Two relating to her back, sleep apnea, and hand impairments are supported by substantial evidence; and

3. Whether the ALJ erred in analyzing the opinions of McMichael's treating physician and treating specialist.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 9-17.)

## III. ALJ DECISION

In his June 21, 2012 decision, the ALJ found that McMichael met the insured status requirements of the SSA through December 31, 2012 and had not engaged in any substantial gainful activity since January 1, 2009, the alleged date of McMichael's onset of her disability. (Tr. 14.) The ALJ further found that McMichael suffered from the following severe impairments: fibromyalgia and an anxiety disorder. (Tr. 14.) In making such a determination, the ALJ stated:

> I conclude that based on the objective findings and subjective allegations, the claimant's medically determinable impairments described above in **bold** are severe impairments. These medically determinable impairments cause more than a slight abnormality, and impose more minimal limitation on the individual's physical or mental ability to engage in basic work activities. The claimant has severe impairments by regulatory definition. See 20 CFR 416.920(c), 416.921, and *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). When determining whether a medically determinable impairment is "severe", the claimant's allegations of pain and other symptoms will be considered. See 20 CFR § 416.929(d), SSRs 96-3p, and 96-4p.

(Tr. 14.) As to McMichael's alleged back impairment, sleep impairment, and hands impairment, the ALJ stated:

> All other alleged impairments are nonsevere because they had a minimal effect on the individual such that it does not interfere with the individual's ability to work. An impairment can be considered as not severe only if it is a slight abnormality (having) such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience (Id.).
>
> The claimant alleges that back pain contributes to her inability to perform work activity. The claimant's alleged spinal disorder is supported by objective medical evidence. X-rays and magnetic resonance imaging (MRI) of the thoracic spine in December 2008 showed lumbar and mild thoracic spondylosis, advanced changes of degenerative disc disease with associated facet arthropathy at L5-S1, but no compromise of canal or formina at any level. In addition, x-rays of the pelvis found normal sacroiliac joints, pelvis and hips. Furthermore, MRI of the lumbar spine showed disc bulge and mild narrowing at L4-5 and disc desiccation at L5-S1. However, as of March 3, 2011, the claimant's diagnosed spondylitis was reported as stable and under treatment. Therefore, the claimant's

> degenerative disc disease is of a nonsevere impairment because it is stable and under treatment.
>
> . . . .
>
> The claimant underwent sleep studies. Dr. Alling diagnosed the claimant with sleep apnea, but noted that the claimant refuses a CPAP machine because she is unable to tolerate anything over her mouth or nose. The claimant's sleep apnea is nonsevere because it did not result in any continuous exertional or nonexertional functional limitations.
>
> Nerve conduction velocity testing found mild right and left medial neuropathy of the wrist on March 2, 2011, that significantly worsened compared to an EMG study done in October 2009. Treating physician Eugene Pak, M.D. diagnosed the claimant with carpal tunnel syndrome. However, as the claimant did not allege it as a factor contributing to her inability to work, I find that it is a nonsevere impairment.

(Tr. 14-16 (internal citations omitted).)

Next, the ALJ held that none of McMichael's impairments, or combination of impairments, met or equaled the severity of any impairments in the Listing. (Tr. 16-18.) As to McMichael's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). The claimant can occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, sit for approximately six hours in an eight-hour workday and walk or stand for two hours in an eight-hour workday. She is unable to climb ladders, ropes or scaffolds. The claimant is restricted to simple tasks and instructions. The claimant is able to use judgment in work related decision[s]. She can respond appropriately to supervisors and coworkers. She is able to maintain A&C for 2-hour intervals. The claimant is able to adapt to and deal with changes in work settings and environments.

(Tr. 18 (emphasis omitted).) Next, the ALJ found that McMichael was not able to perform her past relevant work. (Tr. 22.) However, the ALJ opined that McMichael was able to perform jobs that existed in significant numbers in the national economy; consequently, the ALJ concluded that McMichael was not disabled. (Tr. 23.)

## IV. DISCUSSION

### A. Step Two Issues

McMichael first complains that the ALJ applied the incorrect legal standard at Step Two in evaluating her back impairment. (Pl.'s Br. at 1, 9-10.) Specifically, McMichael states:

> While the ALJ in McMichael's case cited to *Stone* and stated generally that, other than the two impairments he found severe, "all other alleged impairments are nonsevere because they had a minimal effect on the individual such that it does not interfere with the individual's ability to work," he applied a completely different standard in his analysis of Mitchell's [sic] back impairments at step two. (*See* Tr. at 15.) He specifically found that McMichael's back impairments were not severe because they were reported as "stable" in the medical records and McMichael was "under treatment" for them. (Tr. at 15.) McMichael contends that the standard applied to her back impairments was not the same standard put forth in *Stone*, and the ALJ's failure to use the correct standard affected her substantial rights.

(Tr. 9-10.)

To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *cf. id.* §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104–05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (emphasis added).

In this case, it is clear that the ALJ applied the correct legal standard as he specifically cited to *Stone* and recited the appropriate standard. (Tr. 14.) As set forth above, the ALJ, after citing to *Stone*, stated:

> All other alleged impairments are nonsevere because they had a minimal effect on the individual such that it does not interfere with the individual's ability to work. An impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

(Tr. 14.) While McMichael argues that the ALJ actually applied a different legal standard in analyzing McMichael's back impairment due to the ALJ's actual choice of words in explaining why the back impairment is not severe, the Court does not find such argument persuasive. It is clear from the ALJ's opinion that he understood the correct legal standard and applied such standard at Step Two.

In her second Step Two issue, McMichael argues that the ALJ's findings that her back impairment, sleep apnea, and hands impairment are not severe are not supported by substantial evidence. (Pl.'s Br. at 10-13.) As to her back impairment, McMichael "contends that the ALJ's reliance on statements that she was stable or being treated for a condition was not good cause for finding that her back impairment was non-severe." (Pl.'s Br. at 10.) McMichael further argues that the evidence the ALJ cited in support of his finding was not accurately referenced nor summarized. (Pl.'s Br. at 11.) McMichael claims that there is evidence in the record that supports a finding that her back impairment interferes with her ability to work. (Tr. 11-12.)

As stated above, the ALJ found at Step Two, *inter alia*, that McMichael's back impairment was not a severe impairment. In making such a determination, the ALJ relied, *inter alia*, on the following evidence in the record: (1) a December 2008 MRI of the thoracic spine that, while showing lumbar and mild thoracic spondylosis and advanced changes of degenerative disc disease with associated facet arthropathy at L5-S1, showed no compromise of canal or foramina at any level (Tr. 15; *see* Tr. 244-45) and (2) treatment records dated March 3, 2011 in which Jeff Alling, M.D. ("Dr. Alling"), noted that McMichael's "spondylitis, ankylosing" was "stable, under treatment." (Tr. 15, 679; *see also* Tr. 20.[1])

In this case, it is clear that the ALJ was aware of and considered McMichael's back impairment in his decision. (*See, e.g.*, Tr. 18.) Based on all the evidence in the record, however, the ALJ determined that McMichael's back impairment was not a severe impairment based on the above-described evidence. While the ALJ may have erred in not discussing all the evidence in the record relating to McMichael's back impairment, any error is harmless for several reasons. *See Murrell v. Colvin*, No. 3:12-CV-3757-G (BN), 2013 WL 4623549, at *5 (N.D. Tex. Aug. 29, 2013) ("[E]ven if the ALJ's determination that Plaintiff's borderline intellectual functioning was not a severe impairment was error, Plaintiff cannot show the prejudice required for remand."). First, as noted by the Commissioner, the fact that Plaintiff's back impairment was controlled with treatment indicates that it did not cause work-related functional limitations. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."). In addition, McMichael, while pointing to other evidence indicating McMichael's pain was caused, in part by her back impairment, has not presented any non-conclusory or non-speculative

---

[1] As noted by McMichael, the ALJ incorrectly referenced Exhibit 18F, page 9 for the March 3, 2011 treatment notes. (Tr. 15, 20.) However, it appears that this reference was a typographical error and the ALJ meant to refer to Exhibit 17F, page 9. (Tr. 679.)

evidence showing how her back impairment, alone, impacted her ability to work in a manner not already accounted for in the ALJ's RFC determination. *See Martinez v. Astrue*, No. 2:10-CV-0102, 2011 WL 4128837, at *9 (N.D. Tex. Sept. 9, 2011). The mere presence or diagnosis of some impairment is not disabling per se. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

As to the issue of sleep apnea, McMichael claims, citing to various reports of severe chronic fatigue in the record, the ALJ erred in not finding that such sleep apnea was severe at Step Two. (Pl.'s Br. at 12.) As to McMichael's sleep apnea, the ALJ, as noted above, specifically considered this impairment and ultimately determined that it was not severe because it did not result in any continuous exertional or nonexertional functional limitations. (Tr. 16 .) It is clear that the ALJ specifically considered McMichael's sleep apnea and McMichael does not point to any evidence in the record indicating that her sleep apnea caused any work-related limitations beyond those already found by the ALJ in his RFC determination. Thus, remand is not required.

As to the issue of her hand impairments, McMichael claims that the ALJ erred in stating that the reason he found such impairments were not severe was because McMichael did not allege it is a factor contributing to her inability to work. (Pl.'s Br. at 12.) McMichael points to various pieces of evidence in the record where she indicated that her medical impairments affected the use of her hands and medical evidence indicating that she experienced hand and finger pain and was diagnosed with carpal tunnel syndrome. (Pl.'s Br. at 12-13.) While the ALJ may have erred in his stated reasons for not finding that McMichael's hand impairments were severe, McMichael does not point to any evidence in the record indicating that her hand

impairments caused any work-related limitations beyond those already found by the ALJ in his RFC determination. Consequently, any error is harmless and remand is not required.

### B. Treating Physicians

Next, McMichael argues that the ALJ erred in failing to provide good cause and failing to analyze the factors pursuant to 20 C.F.R. § 404.1527(c) prior to rejecting the opinions of Dr. Alling, her treating primary care physician, and Eugene Pak, M.D. ("Dr. Pak"), her treating neurologist. Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." 209 F.3d 448, 453 (5th Cir. 2000); *see also* 20 C.F.R. § 416.927(c). Under the statutory analysis of 20 C.F.R. § 404.1527(c), the ALJ must evaluate

the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see also* 20 C.F.R. § 416.927(c); SSR 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) only if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than the another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

### 1. Treating Physician Dr. Alling

In this case, contrary to McMichael's claims, the ALJ did not reject the opinions of Dr. Alling in his May 9, 2011 Physical Capacities Evaluation. Instead, the ALJ indicated that he was

giving Dr. Alling's opinions "some weight" to the extent it is consistent with the above residual functional capacity. (Tr. 21.) While McMichael disagrees, claiming that the ALJ, in essence, rejected Dr. Alling's opinions, a comparison of the ALJ's RFC determination to Dr. Alling's May 9, 2011 Physical Capacities Evaluation indicates that the ALJ did adopt at least one of his opinions, including that McMichael could never climb. Because the ALJ did not fully reject all of Dr. Alling's opinions, the ALJ was not required to analyze the factors set forth in 20 C.F.R. § 404.1527(c). *See Newton*, 209 F.3d at 453 ("[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[(c)].

However, even assuming the ALJ was required to perform a detailed analysis under Sections 404.1527(c), the Court finds that the ALJ did perform such an analysis. As to factors one and two, the ALJ went through many of Dr. Alling's treatment records, noting that he was a treating physician that had treated McMichael for numerous ailments over several years. (Tr. 15-16, 19-22.) As to factors three, four, and six, the ALJ set forth in great detail much of the other medical evidence in the record. In addition, he stated:

> I have also reviewed, considered, evaluated, analyzed, and weighed all opinion evidence, conflicting or otherwise, and regardless of its nature and source (consultative, treating, or State medical experts), in accordance with the requirements of 20 CFR 404.1527, 416.927, and SSRs 96-2p, 96-5p, and 96-6p. (See previous discussions of all the various contrary, contradictory, or similar opinions/conclusions of claimant's physical and mental impairments by source and exhibits cited heretofore.) . . . All opinions/conclusions were accorded the weight merited by the overall evidence from each source, in conjunction with the total evidence in the case and other relevant factors as provided in the regulations.
>
> Moreover, due weight and consideration was given to the analyses by the State Agency's highly qualified medical, psychiatric, and other personnel, who are experts in the evaluation of medical issues in disability claims under the Social Security Act, based on treating, consultative, or other sources, regarding

claimant's mental and physical impairments and their restrictions and limitations, regarding the issue of the credibility of the severity of claimant's alleged pain, and regarding other symptoms pursuant to the guidelines in Sections 404.1529, 416.927, and SSR 96-7p. Their documents also establish that the evidence of the claimant's treating sources was given its due weight when considered along with the evaluations of consultative physicians, pursuant to the guidelines in Sections 404.1529, 416.927, (SSR 96-2p). Therefore, in making my decision, I must give greater weight to the opinion of the State Agency's expert medical and other expert personnel regarding the severity of the claimant's physical and mental impairments and residual functional capacity. Their opinions are consistent with and supported by the preponderance of medical and the other evidence in the record, especially evidence of medically acceptable clinical and laboratory diagnostic techniques. SSR 96-6p.

    In sum, the above residual functional capacity assessment is supported by Dr. Ligon's assessment of functional limitations regarding her exertional capacity and ability to climb ladders, ropes or scaffolds. It is also supported by Dr. Alling's evaluation of the claimant's tolerance for exposure to dangerous machinery and unprotected heights. In addition, the mental residual functional capacity regarding of [sic] the claimant's limitations in maintaining concentration, persistence, or pace is supported by Dr. Phelan's assessment of same. Finally, the claimant's limitations in maintaining social functioning is supported by Dr. Morris' finding that the claimant's irritability is secondary to and exacerbated by her pain symptoms.

(Tr. 21-22 (internal citations omitted).) Based on the foregoing, it is clear the ALJ explained what evidence he was relying on in making his decisions and why he chose to give Dr. Alling's opinions only "some weight." As to factor five, there is no evidence that Dr. Alling is a specialist; consequently, this factor is not relevant. Because the ALJ properly considered the opinions of Dr. Alling, remand is not required.

### 2. Treating Neurologist Dr. Pak

As to Dr. Pak's July 7, 2011 opinion, the ALJ did reject such opinion, stating that he was assigning such opinion "little weight because it is more restrictive than shown by evidence such as the claimant's report of her activities of daily living." (Tr. 20.) However, the Court concludes that the ALJ did properly analyze his opinion pursuant to the factors set forth in 20 C.F.R. § 404.1527(c) before rejecting such opinion. As to factors one and two, the ALJ, noting that Dr.

13

Pak was a treating physician, went through several of Dr. Pak's treatment records, including his July 7, 2011 Physical Capacities Evaluation. (*See, e.g.*, Tr. 16, 19 (referencing Exhibits ("Exs.") 5F/ 18, 27, 29; 18F/13-15; 5F/22-25), 20. (Tr. 15-16, 20-22.) As to factors three, four, and six, the ALJ, as noted above, set forth in great detail much of the other medical evidence in the record and explained that he was rejecting the opinions in Dr. Pak's July 7, 2011 Physical Capacities Evaluation because it was more restrictive than shown by the other evidence in the record. As to factor five, although the ALJ did not specifically mention that Dr. Pak was a neurologist, it is clear that he, at least implicitly, knew this fact as Dr. Pak's records which were referenced by the ALJ in his decision clearly indicate that Dr. Pak is a neurologist.[2] Because the ALJ properly considered the opinions of Dr. Pak, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error

---

[2] For example, at the top of Dr. Pak's July 7, 2011 Physical Capacities Evaluation, it states on each page, *inter alia*, "Dr. EUGENE PAK, SPECIALITY: NEUROLOGIST." (Tr. 747-49.)

or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **February 3, 2015**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 20, 2015.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv